UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WELL LUCK CO, INC.,

                           Plaintiff,       **MEMORANDUM & ORDER**
                                               03-CV-2826 (DRH) (MLO)

    - against -

F.C. GERLACH & Co., INC.,

                           Defendant.
-----------------------------------------------------------X

**A P P E A R A N C E S :**

**YI CHO & BRUNSTEIN, LLC**
Attorneys for Plaintiff
350 Fifth Avenue, Suite 5411
New York, New York 10118
By: Michael M. Yi, Esq.

**GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT, LLP**
Attorneys for Defendant
399 Park Avenue, 25th Floor
New York, New York 10022
By: David M. Murphy, Esq., Erik D. Smithweiss, Esq., Joseph Martin Spraragen, Esq.

**HURLEY, District Judge:**

*INTRODUCTION*

       Well Luck Company, Inc., a wholesale distributor of imported Asian food products, brought the present diversity action against its former customs broker F.C. Gerlach & Company, Inc. following the latter's alleged mismanagement of a customs transaction. Well Luck asserts causes of action for breach of contract, breach of fiduciary duty, and negligence,

and seeks damages. Gerlach, while apparently conceding that it was negligent, asserts that its liability must be limited to $50, and has moved for summary judgment on that issue. For the reasons that follow, Gerlach's motion is granted.

*BACKGROUND*[1]

Well Luck is a corporation organized under New Jersey law, with its principal place of business in New Jersey. Gerlach is a corporation organized under New York law, with its principal place of business in New York. According to Well Luck, it retained Gerlach's services in November 2001, after the latter "represented itself to be a specialist in imports of Asian food products."

On or about November 26, 2001, Well Luck and Gerlach entered into an agreement whereby Gerlach agreed to act as Well Luck's customs broker for certain importation transactions to be specified by Well Luck. In furtherance of this agreement, Gerlach faxed a blank form entitled "Customs Power of Attorney and Acknowledgment of Terms and Conditions of Service." Well Luck did not execute the form sent by Gerlach, instead substituting and executing its own one-page form entitled "Customs Power of Attorney and Designation of Export Forwarding Agent." The body of the form states that Well Luck "hereby constitutes and appoints" Gerlach "to act on its behalf as a true and lawful agent and attorney," in order to:

---

[1] The following facts are derived primarily from Gerlach's Local Civil Rule 56.1 Statement of Material Facts, Well Luck's Response thereto, and the supporting documents referenced by both parties in those submissions; these facts are essentially undisputed, unless otherwise noted.

> Make, endorse, sign, declare, or swear to any customs entry . . . or any other documents required by law or regulation in connection with the importation . . . of any merchandise . . .;
>
> Perform any act or condition which may be required by law or regulation in connection with such merchandise deliverable to said grantor; to receive any merchandise;
>
> Make endorsements on bills of lading conferring authority to transfer title; . . .
>
> Sign, seal, and deliver for and [act as] grantor [of] any bond required by law or regulation in connection with the entry or withdrawal of imported merchandise . . .;
>
> Sign and swear to any document and to perform any act that may be necessary or required by law or regulation in connection with the entering, clearing, lading, unlading, or operation of any vessel or other means of conveyance;
>
> Authorize other Customs Brokers duly licensed within the territory to act as grantor's agent; . . .
>
> And generally to transact Customs business, including filling of claims or protests . . . in which said grantor is or may be concerned or interested and which may properly be transacted or performed by an agent and attorney;
>
> Giving to said agent and attorney full power and authority to do anything . . . necessary to be done in the premises as fully as said grantor could do if present and acting, hereby ratifying and confirming all that the said agent and attorney shall lawfully do by virtue of these presents[.]

The form additionally states:

> This power of attorney to remain in full force and effect until revocation in writing is duly given to and received by grantee (if the donor of this power of attorney is a partnership, the said power shall in no case have any force or effect in the United States after the expiration [of] 2 years from the dates of its execution);

> Appointment as Forwarding Agent: Grantor authorizes the above grantee to act within the territory as lawful agent and sign or endorse export documents . . . necessary for the completion of an export on grantor's behalf as may be required under law and regulation in the territory and to appoint forwarding agents on grantor's behalf.

The form then states, directly above the line containing Well Luck's signature: "Grantor hereby acknowledges receipt of _____ terms and conditions." "F.C. Gerlach & Co." is typed onto the blank line. Finally, at the very bottom of the page, below the lines for date and signature, is written:

> If you are the importer of record, payment to the broker will not relieve you of liability for U.S. Customs charges (duties, taxes or other debts owed Customs) in the event the charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to the "U.S. Customs Service" which shall be delivered to Customs by the broker. Importers who wish to utilize this procedure must contact our office in advance to arrange timely receipt of duty checks.
>
> Please see reverse for Individual, Partnership, or Corporate certifications.

The only significant factual uncertainty in this case is what, if any, additional forms or documents were sent to Well Luck on Gerlach's behalf in November 2001. Gerlach explains that its "Terms and Conditions of Service" refers to a separate, two-page document, and that its standard procedure is to provide customers with a copy of the document, "in accordance with the customs brokerage industry's standard practice, together with the Customs Power of Attorney." Gerlach accordingly "believe[s]" that it would have provided its terms and conditions of service to Well Luck contemporaneously with the Power of Attorney form. Gerlach's "Terms and Conditions of Service" state in relevant part:

> **9. Disclaimers: Limitation of Liability.**
>
> . . . .
>
> (b) Subject to (c) below, Customer agrees that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts . . .;
>
> (c) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefor, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).
>
> (d) In the absence of additional coverage under (c) above, the Company's liability shall be limited to the following:
>
>     (i) where the claim arises from activities other than those relating to customs brokerage, $50.00 per shipment or transaction, or
>
>     (ii) where the claim arises from activities related to "Customs business," $50.00 per entry or the amount of brokerage fees paid to Company for the entry, whichever is less.

Well Luck insists that Gerlach *did not* provide it with the "Terms and Conditions of Service" form until April 9, 2003 (*after* the events that precipitated the present lawsuit). Well Luck concedes that "at no time after signing the power of attorney did Well Luck inform F.C. Gerlach that it had not received a copy of the Terms and Conditions of Service, nor did Well Luck ever request F.C. Gerlach to provide it with a copy of same." But according to Well Luck, it was simply unaware that any additional "Terms and Conditions of Service" form existed, and assumed that all of Gerlach's terms and conditions were contained within the four corners of the one-page "Power of Attorney" form. Gerlach's reply memorandum concedes that for purposes of the present motion, it must be assumed that Well Luck did not in fact receive a copy of the separate "Terms and Conditions" form at any point prior to April 9, 2003.

From November 2001 until April 2003, Gerlach prepared and filed over 150 customs entries on Well Luck's behalf. For each entry, Gerlach sent Well Luck an invoice. The reverse side of each invoice contains identical "Terms and Conditions of Service," whose paragraph 5(c) states in relevant part:

> On an export or import the Company shall not in any way be responsible or liable for increased duty, penalty, fine or expense unless caused by the negligence or other fault of the Company, in which event its liability to the Customer shall be governed by the provisions of paragraphs 8-10 below.

Paragraph 8 of the Terms and Conditions states in full:

> Limitation of Liability. Subject to the provisions of 19 CFR Section 111.44, the Customer agrees that the Company shall in no event be liable for any loss, damage, expense or delay to the goods resulting from the negligence or other fault of the Company for any amount in excess of $50 per shipment (or the invoice value, if less) and any partial loss or damage for which the Company may be liable shall be adjusted pro rata on the basis of such valuation. The Customer has the option of paying a special compensation to increase the liability of the Company in excess of $50 per shipment in case of any loss, damage, expense or delay from causes which would make the Company liable, but such option can be exercised only by specific written agreement made with the Company prior to shipment, which agreement shall indicate the limit of the Company's liability and the special compensation for the added liability by it to be assumed.

Paragraph 10 of the Terms and Conditions states in full:

> Liability of Company. Subject to the provisions of 19 CFR Section 111.44, it is agreed that any claim or demand for loss, damage, expense or delay shall be only against the carriers, truckmen, lightermen, forwarders, customs brokers, agents, warehousemen or others whose actual custody or control the goods may be at the time of such loss, damage, expense or delay, and that the Company shall not be liable or responsible for any claim or demand from any cause whatsoever, unless in each case the goods were in actual custody or control of the Company

>and the damages alleged to have been suffered be proven to be caused by the negligence or other fault of the Company, its officers or employees, in which event the limitation of liability set forth in paragraph 8 herein hall apply. The Company shall not in any circumstances be liable for consequential or punitive damages or damages arising from loss of profit and shall not be liable to the Customer for actual or statutory damages unless it is first proven that the Company had knowledge of the circumstances giving rise to such claims and that the Company directly contributed to the act(s) allegedly causing such damages.

The bottom of the "Terms and Conditions of Service" page indicates that it was last updated in September 1987. Well Luck apparently never paid any "special compensation" to increase Gerlach's potential liability beyond $50 per shipment.

In March 2003, Well Luck notified Gerlach that it had purchased and shipped ten containers of blanched peanuts from the People's Republic of China. Well Luck also informed Gerlach that the shipment should be entered under a particular subheading of the U.S. "Harmonized Tariff Schedule," and that the shipment must be submitted on the April 1, 2003 quota entry. Gerlach admits that it entered the shipment under the wrong subheading (a "non-quota provision that was inapplicable to the merchandise"), causing Customs to "den[y] the in-quota tariff rate to plaintiff's shipment." As it would then have been forced to pay a substantially higher duty on the goods, Well Luck opted to cancel the entire entry. Well Luck states that it was able to locate alternative purchasers in Canada at a commercially feasible rate for four of the ten containers, but it was "unable to find buyers for the remaining six," which were returned to the sellers in China at Well Luck's expense. Well Luck asserts that Gerlach has failed to respond to its demands for reimbursement.

On June 6, 2003, Well Luck filed the present lawsuit; Gerlach submitted the

present motion for summary judgment on November 22, 2004.

## *DISCUSSION*

I.  *Legal Standards: Summary Judgment*

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 67 (2d Cir. 1998). It is the responsibility of the party moving for summary judgment to offer admissible evidence showing the absence of any genuine issue of material fact. *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). It is the responsibility of the party opposing summary judgment to offer admissible evidence setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The responsibility of a district court deciding a motion for summary judgment is "limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994)). The court must therefore resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing a summary judgment motion. *Castle Rock Entertainment, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). "If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable." *Folkes v. N.Y. Coll.*

*of Osteopathic Med.*, 214 F. Supp.2d 273, 279 (E.D.N.Y. 2002) (citing *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996)).

Nevertheless, a party opposing summary judgment must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings or mere conclusory statements. *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Bd. of Elections of the City of New York*, 224 F.3d 149, 157 (2d. Cir. 2000), but is certainly not unobtainable. "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

II. *Gerlach's Liability Should Be Limited to Fifty Dollars as a Matter of Law.*

   A. *Relevant principles of contract interpretation*

Under New York law, a contract is interpreted to effectuate the parties' reasonable expectations. *See Omni Berkshire Corp. v. Wells Fargo Bank, N.A.*, 307 F.

Supp.2d 534, 539-40 (S.D.N.Y. 2004) (quoting *Sunrise Mall Assocs. v. Import Alley of Sunrise Mall, Inc.*, 621 N.Y.S.2d 662, 663 (App. Div. 1995)). To give effect to the parties' reasonable expectations, the court must determine their purpose and intent in entering the contract. *Sunrise Mall*, 621 N.Y.S.2d at 663. The first step in this analysis is an examination of the language of the contract. *See Md. Cas. Co. v. W.R. Grace and Co.*, 23 F.3d 617, 624 (2d Cir. 1993); *and U.S. v. Am. Soc'y of Composers, Authors and Publishers*, 309 F. Supp.2d 566, 571 (S.D.N.Y. 2004).

"Where the contract is unambiguous on its face, it should be construed as a matter of law and summary judgment is appropriate." *Niagara Frontier Transit Metro Sys., Inc. v. County of Erie*, 623 N.Y.S.2d 33, 33 (App. Div. 1995); *see also Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985). By contrast, where the contract's language is ambiguous, its interpretation is a question of fact normally reserved for a jury. *See N.Y. v. Home Indem. Co.*, 486 N.E.2d 827, 829 (N.Y. 1985). Contract language is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978)). Alternatively, contractual language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk-In Med. Ctrs.,*

*Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987). The question of whether a writing is ambiguous is itself a question of law. *Pellot v. Pellot*, 759 N.Y.S.2d 494, 497 (App. Div. 2003).

A "course of dealing" is commonly defined as "a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Restatement (Second) of Contracts § 223(1) (1979). "Unless otherwise agreed, a course of dealing between the parties gives meaning to or supplements or qualifies their agreement." Restatement (Second) of Contracts § 223(2). Evidence of a prior course of dealing can thus establish a party's awareness of and consent to intended contractual terms. *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 31 (2d Cir. 1997) (citing Restatement (Second) of Contracts § 223).

"Typically, a course of dealings analysis focuses on the actions of the parties with respect to a specific issue that the parties may have encountered before," such that "a factfinder could reasonably infer that the parties have impliedly incorporated this understanding into their subsequent contracts." *Id*. But the prior course of dealing doctrine extends "beyond prior dealings involving actual disputes to include evidence that a party has ratified terms by failing to object. Specifically, terms repeated in a number of written confirmations may, over time, become part of later contracts." *Id.*; *see also Pervel Industries, Inc. v. T M Wallcovering, Inc.*, 871 F.2d 7, 8 (2d Cir. 1989) ("Where, as here, a manufacturer has a well established custom of sending purchase order confirmations containing an

arbitration clause, a buyer who has made numerous purchases over a period of time, receiving in each instance a standard confirmation form which it either signed and returned or retained without objection, is bound by the arbitration provision."). In such cases, "the common knowledge and understanding of the parties . . . may be inferred from . . . tacit acceptance of a clause repeatedly sent to the offeree in an order confirmation document." *New Moon Shipping Co.*, 121 F.3d at 31 (citing *Capitol Converting Equip., Inc. v. LEP Transp., Inc.*, 965 F.2d 391, 395 (7th Cir. 1992)).

Although the existence of a prior course of dealing between contracting parties is generally a factual issue, where one party fails to contest the material facts of its prior course of dealing, a court may find that a course of dealing existed as a matter of law. *See Capitol Converting Equip., Inc. v. LEP Transp., Inc.*, 965 F.2d 391, 395 (7th Cir. 1992).

B. *The parties' "course of dealing" establishes as a matter of law a fifty-dollar limitation on Gerlach's liability to Well Luck.*

Well Luck and Gerlach spend much of their briefings debating whether the sentence "Grantor hereby acknowledges receipt of F.C. Gerlach & Co. terms and conditions" refers to a separate set of terms and conditions, or else merely refers to any terms and conditions contained within the four corners of the Customs Power of Attorney form itself. However, this issue is academic; regardless of what, if any, terms are referenced in the Power of Attorney form, the parties' subsequent course of dealing unambiguously establishes their intent to limit Gerlach's potential liability to $50 per shipment (unless specifically agreed otherwise).

In the present case, Well Luck does not dispute Gerlach's assertion that the parties conducted over 150 transactions prior to the blanched peanut shipment at the root of the present case, and that in each such transaction Well Luck received an invoice from Gerlach containing a copy of the "Terms and Conditions of Service," including the clauses limiting Gerlach's liability to $50 absent Well Luck's purchase of additional liability insurance. This evidence is legally sufficient to establish a course of dealing between the parties limiting Gerlach's liability to $50 per shipment. *See Capitol Converting Equip*, 965 F.2d at 395 (where each invoice in parties' "hundreds of transactions" contained $50 limitation of liability, course of dealing between parties so limiting liability is established as matter of law, and plaintiff's affidavit that it was unaware of such limitation is insufficient to create genuine factual dispute); *see also ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 253 F. Supp.2d 757, 760, 767, 767 n.3 (S.D.N.Y. 2003) (Chin, J.) (noting "it is clear" that course of dealing existed between shipper and customs broker limiting liability to $50, in light of "pro forma" invoice containing such term on reverse side used in at least twenty-five prior transactions between the parties, as well as fact that such term is "standard in the industry").

Well Luck argues, however, that the liability-limiting language in Gerlach's invoice is legally invalid or inapplicable to the present dispute.[2] But Well Luck is wrong.

    1.    *The reference to 19 C.F.R. § 111.44 in Gerlach's invoices does not*

---

[2] Well Luck frames its arguments as "genuine issue[s] of material fact," but as Gerlach notes, they are in fact legal arguments regarding the interpretation and legal effects of contractual language. As such, they are resolvable on a summary judgment motion. *See Carnegie Hall Corp. v. City Univ. of New York*, 729 N.Y.S.2d 93, 94-95 (App. Div. 2001).

*nullify the limitation of liability clause therein.*

As Well Luck stresses, the form language at the reverse side of Gerlach's invoices indicates that it was last revised in September 1987. The liability-limiting language in these invoices also states that it is subject to the provisions of 19 C.F.R. § 111.44, which, although overturned effective December 8, 1993, was in effect in September 1987 and provided that "[a customs] broker may not limit his liability to a client with respect to a claim by the client arising out of the wrongful or negligent action of the broker in connection with a matter handled by him as a broker." Accordingly, Well Luck argues that the reference to 19 C.F.R. § 111.44 on the back of the invoice bars Gerlach from limiting its liability. Gerlach's arguments to the contrary are more persuasive, however.

Well Luck cites two cases in support of its argument that the express incorporation of 19 C.F.R. § 111.44 in a limitation of liability clause nullifies a customs broker's attempt to limit his liability — regardless of whether that regulation is otherwise still in force. The first, *Qualimetrics, Inc. v. Lep Profit Int'l, Inc.*, No. 94 Civ. 7928, 1996 WL 586330 (S.D.N.Y. Oct. 11, 1996) is unpersuasive. As Gerlach notes, the disputed contracts in that case preceded the December 8, 1993 revocation of Section 111.44. *See id.* at *1. And because 19 C.F.R. § 111.44 "only applie[d] to those aspects of a carrier's services that involve transactions with customs, and Qualimetrics' claim "ha[d] nothing to do with the way [the defendant] handled its customs responsibilities," the court was not required to determine whether the provision would apply to pre-December 1993 contracts, and it did not. In the second case cited by Well Luck, *Pacific Tall Ships Co. v. Kuehne & Nagel Inc.*, 102 F.

Supp.2d 923 (N.D. Ill. 2000), a $50 liability limitation clause on the back of each invoice between a shipper and customs broker was held inapplicable to a 1996 transaction between the parties, because it referenced 19 C.F.R. § 111.44. But as Gerlach notes, nothing in *Pacific Tall Ships* indicates that the court was aware that the regulation was no longer in force. The court appears to have simply assumed that the regulation was applicable, and applied it in a straightforward manner. In sum, neither case cited by Well Luck explicitly supports Well Luck's dubious contention that a regulation, having been cancelled or invalidated, is nevertheless preserved or resurrected through its continued incorporation in the provisions of a previously drafted invoice. Nor was this Court able to independently locate any case saying as much.

Gerlach argues that because the above regulation was overturned, its continued incorporation into a form invoice is irrelevant to a transaction that post-dates 1993. Gerlach bases its argument primarily on *Hurco Cos., Inc. v. Kuehne & Nagel, Inc.*, No. 00 Civ. 0697, 2001 WL 1386077 (S.D. Ind. Sept. 28, 2001). In *Hurco*, the defendant had served as the plaintiff's customs broker since 1990; all of the defendant's invoices included provisions limiting its liability to $50 per incident, "[s]ubject to 19 C.F.R. Part 111.44, if valid." *Id.* at *1, 5. Noting that "parties are responsible for knowing changes in law," the district court held that "[r]egardless of any bar to limiting liability for the first three years of the contract, beginning in 1994, the invoices signified [the defendant's] intent to limit its liability. The parties are bound by their course of dealing." *Id.* at *5. Well Luck acknowledges that the limitation of liability clauses on the reverse side of the defendant's invoices in *Hurco* "appear

to have been substantially the same"as those on the reverse side of Gerlach's invoices, except that in this case the invoices did not qualify the applicability of 19 C.F.R. § 111.44 with the words "if valid." The distinction is not controlling, however. As Gerlach states, "*Hurco* did not attach significance to the added words 'if valid.' " This Court finds *Hurco* to be more persuasive than the cases cited by Well Luck, and accordingly applies it to the present facts. The reference to 19 C.F.R. § 111.44 in the invoices Gerlach sent Well Luck did not invalidate the $50 limitation of liability clause contained therein.

> 2. *The limitation of liability clauses on Gerlach's invoices are applicable to Well Luck's claims.*

Well Luck's final argument is that a "close, careful reading" of the liability-limiting language on the back of Gerlach's invoices shows that it is inapplicable to Well Luck's claims. According to Well Luck, paragraphs 5, 8, and 10 of the invoice's "Terms and Conditions of Service" (quoted in relevant part in the *Background* section, *supra*) limit Gerlach's liability only as to claims arising out of "any loss, damage, expense or delay to the goods." Well Luck insists that its damages, by contrast, "resulted from F.C. Gerlach's negligent actions in rendering its services as a customs broker." Thus, Well Luck suggests that the liability-limiting language is only applicable to claims arising out of "actual, physical damage caused to the merchandise itself."

The only case that Well Luck cites to support its reading of the invoice language is *Hurco Cos., Inc. v. Kuehne & Nagel, Inc.*, No. 00 Civ. 0697, 2001 WL 1386077 (S.D. Ind. Sept. 28, 2001). Well Luck states that "like the case at bar, Hurco's claims arose out of

K&N's wrongful or negligent actions in connection with the customs entry handled by it as Hurco's customs broker," and that "like the case at bar, the Customs Power of Attorney executed by Hurco did not contain a limitation of liability clause, but the reverse side of K&N's invoices contained limitation of liability clauses" similar to those in the present case. Well Luck concedes that the *Hurco* court "held that the limitation of liability clause contained in paragraph 5 was enforceable"; indeed, the *Hurco* court granted summary judgment to the defendant on this basis. Well Luck asserts, however, that unlike in the present case, Hurco sued K&N to recover the increased duty, penalty, or fine that it was forced to pay — and that it actually did pay — as a result of the latter's negligent customs services. Well Luck argues that *Hurco* is thus distinguishable from the present case, where it *refused to pay* the increased customs fees, and instead seeks to recover the amount of money that it lost by sending part of its blanched peanut shipment back to China instead.

As noted earlier, paragraph 5(c) of the invoice's "Terms and Conditions of Service" states that Gerlach "shall not in any way be responsible or liable for increased duty, penalty, fine or expense unless caused by [its] negligence or other fault . . . , in which event its liability to [Well Luck] shall be governed by the provisions of paragraphs 8-10 below." Paragraph 5's language clearly and unambiguously refers to customs-related mishaps such as the one at the root of this case. Neither the language of *Hurco*, nor of the Gerlach invoices themselves, suggest any distinction between damages arising from the payment of a customs duty, and damages arising from the refusal to pay a customs duty. Regardless of whether Well Luck's decision to ship its peanuts back to China is considered an increased "duty, penalty, or

fine," or (as Well Luck's argument suggests) an "expense," it is clearly covered by Paragraph 5(c). Paragraph 8, in turn, states that Well Luck "shall in no event be liable for any loss, damage, expense or delay to the goods resulting from the negligence or other fault of the Company for any amount in excess of $50 per shipment," unless Well Luck "pay[s] a special compensation to increase [Gerlach's] liability." Paragraph 5's reference to Paragraph 8 is obviously intended to bring any and all customs-related damages — whether "duty, penalty, [or] fine," or alternatively an "expense" — within the ambit of the $50 liability limitation.

In sum, Well Luck offers no valid reason why the limitation of liability contained in Gerlach's invoices is inapplicable to the present case. Well Luck's argument is based on an unreasonable reading of the provisions at issue, and is accordingly unpersuasive as a matter of law. The only reasonable reading of Paragraph 5(c) of the invoices' Terms and Conditions, including its reference to the invoices' Paragraph 8, is that Gerlach's liability is limited to fifty dollars.

D.  *Summary*

Regardless of whether the Power of Attorney form signed by Well Luck refers to any separate "Terms and Conditions," Well Luck clearly indicated its accedence to one such term, namely a fifty dollar limitation on Gerlach's potential liability, by repeatedly accepting Gerlach's invoices. The invoices' language unambiguously indicates that the fifty dollar liability limitation applies to the present case, notwithstanding their reference to 19 C.F.R. § 111.44. Accordingly, Gerlach's liability must be limited as a matter of law to fifty dollars.

*CONCLUSION*

For all of the above reasons, Defendant's motion for summary judgment is hereby GRANTED, and its conceded liability to Plaintiff is accordingly limited as a matter of law to $50.00. The Clerk of Court is directed to enter judgment in the above amount in favor of the Plaintiff, and to CLOSE this case.

**SO ORDERED.**

Dated: Central Islip, New York
August 23, 2005                              /s/
                                             Denis R. Hurley
                                             United States District Judge